**FILED - LN**
September 16, 2024 4:05 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __pjw_/_____   SCANNED BY: _____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

RICHARD SCHOMAKER,

*Plaintiff*,

v.

KATHRYN JOBLONSKI
E. SCOTT WEAVER
INGHAM COUNTY ANIMAL CONTROL
CITY OF EAST LANSING,
a Michigan Municipal corporation,

*Defendants*,

_____/

Richard Schomaker
Pro Se
141 Orchard St.
East Lansing, MI 48823
(517) 303-8715
richscho@gmail.com

_____/

Case No.

Hon.
District Court Judge

**1:24-cv-966
Hala Y. Jarbou
U.S. District Judge**

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, RICHARD SCHOMAKER, complaining of Defendants, and

respectfully alleges as follows:

1

## JURISDICTION AND VENUE

1. This is a civil rights action in which the Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983 and First, Fourth, and Fourteenth Amendments.

2. Jurisdiction of this Court is founded upon 28 U.S.C. § 1331.

3. The events that give rise to this lawsuit took place in the City of East Lansing, County of Ingham, State of Michigan.

4. Venue is appropriate in the Western District of Michigan pursuant to 28 U.S.C § 1391(b) since the acts providing the legal basis for this complaint occurred in the City of East Lansing, County of Ingham, State of Michigan.

## PARTIES

5. Plaintiff, Richard Schomaker (Schomaker), is a citizen of the United States and a resident of the City of East Lansing, County of Ingham, and the Western District of Michigan.

6. Defendant, Kathryn Joblonski (Joblonski), was employed as an Ingham County Animal Control Officer, and at all times relevant herein was acting under the color of law.

7. Defendant, E. Scott Weaver (Weaver), was employed as the City of East Lansing's Building and Code Administrator, and at all times relevant herein was acting under the color of law.

8. Defendant, City of East Lansing, is a municipal corporation organized under the laws of the State of Michigan and conducts its business in Ingham County, in the Western District of Michigan.

9. Defendant, Ingham County Animal Control, is a government agency organized under the laws of the State of Michigan and conducts its business in Ingham County, in the Western District of Michigan.

10. The individual Plaintiff, Richard Schomaker, will be referred to as the "Plaintiff."

11. The individual Defendants, referred to collectively, will be referred to as "Defendants."

12. This cause of action arose in the City of East Lansing, Ingham County, Michigan, in the Western District of Michigan.

## GENERAL ALLEGATIONS

13. On September 14, 2021, the Plaintiff lived at 141 Orchard Street, East Lansing, County of Ingham, State of Michigan.

14. Plaintiff owns his home.

15) Starting on September 14, 2021, the Defendants made a series of actions that repeatedly violated the Plaintiff's constitutional rights, specifically the fourth (4th) and fourteenth (14th) amendments.

16) On October 21, 2021, Ingham County Animal Control Officer Kathryn Joblonski, Director Heidi Williams, Deputy Director Dan Verhougstraete, Animal Control Officers John Good, Alex Meisling, Katie Stewart, assisted by East Lansing Police Department Lt. Chad Pride, Sgt. Kristine Khoury, Officer Steve Whalen, Officer Jake Cortez, Social Worker Susan Gutierrez, Social Worker Amber Teunis, and members of the East Lansing Fire Department conducted a search at 141 Orchard Street with a search warrant procured from a 54-B District Court Judge and dated October 21, 2021 (ATTACHMENT A).

17. The Plaintiff was falsely charged on December 8, 2021 with animal cruelty, a felony under Michigan law.

18. On August 3, 2023, the animal cruelty charge against the Plaintiff was dismissed by nolle prosequi.

3

19. Those aforementioned unconstitutional actions made by the Defendants created a domino effect of administrative actions against the Plaintiff by the City of East Lansing.

## COUNT I – 42 U.S.C. §1983
## FOURTH AMENDMENT
## INVASION OF PRIVACY
## DEFENDANTS JOBLONSKI

20. Plaintiff herein incorporates all prior allegations.

21. On Sept 14, 2021, Officer Joblonski appeared at 141 Orchard Street, in her capacity as an Ingham County Animal Control Officer, to investigate a welfare check complaint on cats roaming around the property.

22. Defendant Joblonski did not encounter anyone on September 14, 2021 at 141 Orchard Street.

23. Before leaving 141 Orchard Street, Officer Joblonski (in her capacity as an Ingham County Animal Control Officer) took pictures of the 141 Orchard Street property (including the house, its fence, and its curtilage) and passed the photos along to the City of East Lansing Parking and Code Enforcement (PACE) Department.

24. Attachment A to this Complaint and Jury Demand is Article III, Section 3 of the Animal Control Ordinance (Amended through August 24, 2021, ATTACHMENT E), a section that outlines an Animal Control Officer's Duties, Authority, and Responsibilities.

25. The only part of Article III, Section 3 that pertains to investigation of or seizure for cruelty to animals is Article III, Section 3 (f).

26. According to Ingham County Animal Control Ordinance, Article III, Section 3 (f) Animal Control Officer Duties, Authority, and Responsibilities, "The Animal Control Officer, his deputies or assistants are hereby authorized and empowered in accordance with the

4

provisions of this Ordinance to enter upon private premises for the purpose of inspecting

same for the purpose of determining the harboring, keeping, or possessing of any dog or dogs

for the specific purpose of determining if the owners of said dogs have complied with the

appropriate provisions of this Ordinance and to apprehend and take with him any dogs for

whom no license has been procured in accordance with this Ordinance or for any other

violation hereof. The provisions of this subsection shall specifically include, but not be

limited to, investigation of or seizure for cruelty to animals."

27. Joblonski wrote the following on the October 21, 2021 affidavit (ATTACHMENT B) to

pursue an October 21, 2021 search warrant: Paragraph 3 (c): "On 09/14/2021, Affiant

responded to the residence and had no contact with the animal owner. Affiant left a blue note

on the front door of the address advising the cat owner to contact Ingham County Animal

Control. While on scene, multiple cats were viewed free roaming in the front yard then fled

to the fenced in backyard. Photos were taken of the property due to signs of hoarding in the

backyard causing the retaining wall to start collapsing and were passed along to East Lansing

Parking and Code Enforcement (P.A.C.E)."

28. Per the Ingham County Animal Control Ordinance Article III, Section 3 (f), Joblonski

exceeded the scope of her duties, authority, and responsibilities, in two instances.

29. The first instance Joblonski exceeded the scope of her duties, authority, and responsibilities,

or ultra vires, is when she, in her capacity as Ingham County Animal Control Officer, acted

as a code enforcement agent for the City of East Lansing when she took photos of the 141

Orchard Street property and "passed [them] along to East Lansing Parking and Code

Enforcement (P.A.C.E.)".

30. In the October 21, 2021 affidavit (ATTACHMENT B), she documented her ultra vires act of making a code enforcement violation determination/decision when she made the statement "due to signs of hoarding in the backyard causing the retaining wall to start collapsing…"

31. Paragraph 29 also includes the second instance Joblonski exceeded the scope of her duties, authority, and responsibilities, or ultra vires: when she made a medical/psychological diagnosis of hoarding on the October 21, 2021 affidavit (Section 3 (x)).

32. The combination of hoarding and code enforcement violation claims on the October 21, 2021 affidavit weighed significantly on the approval of increasing the scope of the search warrant to include the interior of 141 Orchard Street.

33. There are no reports from Joblonski, or either complainants (September 14, 2021 complainant Heidi Butler and October 19, 2021 complainant Stacey Blanden, per the October 21, 2021 affidavit) that there is evidence that cats were kept inside the house.

34. The Plaintiff informed Joblonski that he kept no cats inside, as documented by Joblonski in her Complaint 2021-43903 report.

35. Joblonski stated on the October 21, 2021 affidavit, Section 3, Paragraph X: "Through training and experience Affiant believes that Schomaker shows signs of hoarding disorder including hoarding animals. Animal hoarders historically will harbor animals inside of their residence as well as outside."

36. Joblonski used her hoarding disorder diagnosis to conclude that because the Plaintiff's front yard has multiple cats, then the Plaintiff must be hoarding animals in the backyard, and ultimately, he must also be hoarding animals inside his home.

37. Joblonski, in her capacity as an Ingham County Animal Control, exceeded the scope of her

    duties, authority, and responsibilities, or ultra vires, by acting as a mental health professional

    by diagnosing the Plaintiff with a "hoarding disorder".

38. Joblonski's diagnosis was used in the October 21, 2021 affidavit to apply for a search

warrant that increased the scope to include the inside of Plaintiff's house.

39. By acting ultra vires, Joblonski conducted a warrantless code enforcement inspection/search

on September 14, 2021, and secured an invalid search warrant that included the inside of the

Plaintiff's house based solely on two pieces of information: 1) her "hoarding disorder" diagnosis

and 2) her training and experience.

      WHEREFORE, Plaintiff request that this Court enter judgment in favor of Plaintiff and

against Defendant Joblonski in an amount not less than $100,000.00.


# COUNT II – 42 U.S.C. §1983
# FOURTH AMENDMENT
# INVASION OF PRIVACY
# DEFENDANTS JOBLONSKI AND
# INGHAM COUNTY ANIMAL CONTROL

40. Plaintiff herein incorporates all prior allegations.

41. According to Ingham County Animal Control Ordinance, Article III, Section 3 (f) Animal

    Control Officer Duties, Authority, and Responsibilities, "The Animal Control Officer, his

    deputies or assistants are hereby authorized and empowered in accordance with the

    provisions of this Ordinance to enter upon private premises for the purpose of inspecting

    same for the purpose of determining the harboring, keeping, or possessing of any dog or dogs

    for the specific purpose of determining if the owners of said dogs have complied with the

    appropriate provisions of this Ordinance and to apprehend and take with him any dogs for

7

whom no license has been procured in accordance with this Ordinance or for any other violation hereof. The provisions of this subsection shall specifically include, but not be limited to, investigation of or seizure for cruelty to animals."

42. Defendant Ingham County Animal Control has adopted an ordinance authorizing Animal Control Officers to conduct warrantless searches on private premises in violation of the Fourth Amendment to the United States Constitution.

43. On October 19, 2021, Defendant Joblonski appeared at 141 Orchard Street, in her capacity as an Ingham County Animal Control Officer, to investigate a complainant's claim of multiple "cats in the front yard".

44. Defendant Joblonski did not encounter anyone on October 19, 2021 at 141 Orchard Street.

45. Because Joblonski did not encounter the Plaintiff on October 19, 2021, she did not have consent from the Plaintiff to conduct a search at 141 Orchard Street.

46. On October 7, 2021, Joblonski has advised Plaintiff to stop feeding aforementioned cats if he does not want them to stay on his property.

47. Because of the aforementioned advice, Joblonski does not have legitimate exigent circumstances to conduct a warrantless search on October 19, 2021.

48. On October 19, 2021, Joblonski physically intruded upon 141 Orchard's curtilage for investigatory purposes and conducted an unreasonable search and seizure.

49. In 2018, the U.S. Supreme Court has decided that when an officer physically intrudes on the curtilage to gather evidence, a Fourth Amendment search has occurred and is presumptively unreasonable absent a warrant.

WHEREFORE, Plaintiff request that this Court enter judgment in favor of Plaintiff and against Defendant Joblonski and Ingham County Animal Control in an amount not less than $100,000.00.

## COUNT III – 42 U.S.C. §1983
## FOURTH AMENDMENT
## INVASION OF PRIVACY
## UNREASONABLE SEARCH AND SEIZURES
## DEFENDANTS E. SCOTT WEAVER,
## INGHAM COUNTY ANIMAL CONTROL
## CITY OF EAST LANSING

50. Plaintiff herein incorporates all prior allegations.

51. On October 19, 2021, Joblonski reappeared at 141 Orchard Street, and in her capacity as the Ingham County Animal Control Officer, to investigate a second complainant's claim of multiple "cats in the front yard".

52. On October 21, 2021, after securing a search warrant based on animal control findings from September 14, 2021 to October 19, 2021, Ingham County Animal Control, with assisting agencies from the City of East Lansing Police Department and City of East Lansing Fire Department, conducted a search at 141 Orchard Street,

53. The October 21, 2021 search warrant authorized Defendant Joblonski to search for and seize "Evidence of the crimes of animal cruelty/neglect, including but not limited to the following: Any and all live or deceased domesticated animals. Any and all evidence for proof of domestic animal ownership including but not limited to animal food, veterinarian records, medication, etc."

54. After the October 21, 2021 search, the Ingham County Animal Control forwarded code enforcement violation evidence gathered at the October 21, 2021 search to the City of East Lansing Building and Code Department.

55. E. Scott Weaver, acting as the City of East Lansing Building and Code Administrator, issued the Plaintiff a code enforcement letter on November 18, 2021, enumerating two code violations from the East Lansing Property Maintenance Code (ELPMC) 1) 307.1 Accumulation of rubbish or garbage and 2) 308.1 Infestation.

56. On February 10, 2022, the City of East Lansing informed Plaintiff of additional code violations, based on findings from the October 21, 2021 search at 141 Orchard Street.

57. The City of East Lansing enumerated additional/a more complete list of code enforcement violations from the East Lansing Property Maintenance Code: 108.1 Dangerous Buildings or Structures; 108.2 Dangerous Building Definition; 108.2.1 Door, aisle, passageway, stairway, or other means of exit conforming to city's fire prevention code; 108.2.6 Manifestly unsafe; 108.2.7 Damage from fire wind, flood, nuisance to children; 108.2.8 Intended use of dwelling dilapidation; 302.1 Sanitation; 302.8 Motor vehicles; 302.12 Yard ground cover; 302.4 Weeds and plants; 307.1 Accumulation of rubbish or garbage; 308.1 Infestation; 702.1 Unobstructed path of travel; and 703.1 Fire-resistance-rated assemblies.

58. The warrant did not sought authority to inspect for, locate, or identify violations of any City Ordinance or building code.

59. The City of East Lansing relied on results of Ingham Animal Control Search Warrant to pursue administrative actions against Plaintiff.

60. As a result of Defendants Joblonski and Ingham County Animal Control acted ultra vires as code enforcement agents for the City of East Lansing at the October 21, 2021 search, even

10

though the scope of the search warrant was limited to "evidence of the crimes of animal cruelty/neglect."

61. All of the cats' (seized on October 21, 2021 at 141 Orchard Street) movements were unrestricted (All were found outside, and none were physically restrained by a collar or cage).

62. All of the cats seized at or around 141 Orchard Street were found outside and were free to leave at any time.

63. The evidence (photos, videos) taken per the October 21, 2021 warrant's scope should have been limited to outside areas of 141 Orchard Street.

64. Per Defendant Joblonski's October 21, 2021, she had already investigated the Plaintiff's veterinary records and prescriptions.

65. Since none of the cats' movements (seized on October 21, 2021 at or near 141 Orchard Street) were physically constrained, none of the evidence of pictures and videos taken in that search should have been transmitted to the City of East Lansing, unless Ingham County Animal Control is acting as a code enforcement agent for the City of East Lansing.

66. About half of photos taken by Ingham County Animal Control were related to the backyard and inside the 141 Orchard house were not related to cats or animal cruelty/neglect.

67. The City of East Lansing did not follow up the transmitted evidence gathered for the Ingham County Animal Control's October 21, 2021 search warrant, with its own search warrant with a code enforcement scope.

68. Instead the City of East Lansing issued code enforcement violations to the Plaintiff's 141 Orchard Street property, using evidence gathered from a search warrant not issued to the City

of East Lansing's Building and Code Enforcement Department, with a code enforcement scope.

69. The City of East Lansing Property Maintenance Code (Part I, Chapter 6, Article III, Section 6-175, Chapter 1, Section 104.3.1 Periodic Inspections states that a code official shall conduct periodic inspections based on needs: 1) by area; 2) by complaint; 3) by recurrent violations; 4) whenever reasonable cause exists; 5) for rei-nspection purpose; and 6) for purpose of auditing inspections.

70. As a result of Ingham County Animal Control acting as a code enforcement agent for the City of East Lansing and the City of East Lansing relying on evidence gathered from an animal cruelty search warrant, Plaintiff is now subject to re-inspections and inspections due to recurrent violations.

71. This intense increased scrutiny of 141 Orchard Street by the City of East Lansing has caused Plaintiff to lose his 4th Amendment right of privacy and freedom from unreasonable search and seizures by the aforementioned agencies.

WHEREFORE, Plaintiff request that this Court enter judgment in favor of Plaintiff and against Defendant E. Scott Weaver, Ingham County Animal Control, City of East Lansing in an amount not less than $100,000.00.


## COUNT IV – 42 U.S.C. §1983
## FOURTH AMENDMENT
## FOURTEENTH AMENDMENT
## INEQUITABLE TREATMENT
## DEFENDANTS E. SCOTT WEAVER
## CITY OF EAST LANSING

72. Plaintiff incorporates herein all the prior allegations.

12

73. Nearly two years later, E. Scott Weaver, acting as the City of East Lansing Building and Code Administrator, relied on his knowledge and awareness of the evidence from the October 21, 2021 search, to supplement his evidence on his October 4, 2023 search affidavit (ATTACHMENT C).

74. In the October 4, 2023 search affidavit, paragraph 5 states: "That these premises are in probable violation of Section 504 of the International Fire Code and Section 108.1, 108.2. 108.2.1, 108.2.2, 108.2.6 and 108.2.8 of the City of East Lansing International Property Maintenance Code (IPMC) of East Lansing, Michigan."

75. Five of six of these "probable" violations are exactly the same as what was outlined in paragraph 57 of this document (IPMC code violations Section 108.1, 108.2., 108.2.1, 108.2.6 and 108.2.8), which were code enforcement violations that were issued by the City of East Lansing but were unable to pursue until the underlying felony case (animal cruelty) supporting the search warrant utilized by the City of East Lansing concluded (August 3, 2023).

76. None of the pictures used to support the October 4, 2023 affidavit and October 6, 2023 search warrant (ATTACHMENT D) justified a search of the inside of 141 Orchard Street.

77. East Lansing International Property Maintenance Code Section 104.4 (1) (Right of Entry) states: "**(1)** The chief code official or designee is authorized to enter a structure or premises at all reasonable times to inspect same or to perform any duty imposed by this chapter. If a structure or premises is occupied, the chief code official or designee shall first present proper credentials and request entry. If a structure or premises is unoccupied, the chief code official or designee shall first make a reasonable effort to locate the owner or other persons having charge or control of the structure or premises and request entry. The chief code official or

designee may request entry without presentation of a court order or other authorization. If such entry is refused, the chief code official or designee shall have recourse to every remedy provided by law to exercise and obtain entry.

78. East Lansing International Property Maintenance Code Section 104.4 (2) (Right of Entry) states: (2) Whenever a right of entry authorized under this chapter is refused by an owner, occupant, or other person in charge or control of the structure or premises, the chief code official or designee may take any appropriate action allowed by law including, but not limited to, the following: (a) Seek an administrative or criminal search warrant for the premises; (b) Seek, in a court of competent jurisdiction, an order that such owner, owner's legal agent, operator, occupant or the person in charge or control, cease and desist with such refusal or interference with the inspector's right to enter the premises; (c) If the premises is rental property, suspend or revoke the rental housing license in accordance with this chapter.

79. Per the October 4, 2023 Affidavit, Paragraph 4 states: "As of October 4, 2023, I have not been granted entry to these premises for inspections."

80. Defendant Weaver, through this sworn testimony statement in the October 4 Affidavit, implied that he had asked the Plaintiff for right of entry at 141 Orchard Street prior to applying for the October 4, 2023 warrant.

81. Weaver had never asked the Plaintiff for right of entry permission prior to October 4, 2023.

82. The October 4, 2023 search warrant that was procured by the inadequate October 4, 2023 affidavit resulted in the violation of the Plaintiff's fourth amendment rights (loss of privacy) and highlights the inequitable treatment the Plaintiff receives from the City of East Lansing.

83. The City of East Lansing used the evidence from insufficient October 4, 2023 affidavit and search warrant to pursue a Dangerous Building proceedings against the Plaintiff.

84. The City of East Lansing has systematically, and unfairly, targeted 141 Orchard Street for code violations.

85. The City of East Lansing kept critiquing the status of the fence that abuts an alley on the western side of 141 Orchard Street, often calling it a "nuisance" and a dangerous structure.

86. Two properties north of 141 Orchard Street (153 Orchard Street), a stretch of fence that runs along the west side of 153 Orchard Street, which also abuts the same alley as 141 Orchard Street's, the safety, build, and/or maintenance status of the fence were never inspected or cited by the City of East Lansing.

87. The City allows to continue various violations of its codes depending on the ownership of the property, while at the same time insisting without verification or evidence that it has complete freedom to abate nearby property issues.

88. Such is the state at plaintiff's western property boundary where the City forcibly abated a wall that was protected by a previous jury verdict in its favor, while at the same time admitting that it did not know what it was testifying to was in fact true

89. This inequitable treatment of abating (without bringing the action in a court authorized to grant the desired abatement) plaintiff's while ignoring various code violations at all contiguous sites is offensive and a violation of plaintiff's right to equitable treatment.

90. This is further exacerbated by ICAC's determination that plaintiff was in violation of codes as Joblonski chooses to see them while not expressing concern for other properties nearby.

91. During the time when the structure at 128 Collingwood Drive, East Lansing, was petitioning to be allowed to change its designation from that of an apartment building to that of a fraternity house, plaintiff wrote a number of letters in opposition to this change.

92. Plaintiff's communications to either the planning commission, or the City Council, invariably contained language meant to invoke East Lansing's PR1977-3 which is meant to allow individuals to communicate with City Council confidentially.

93. This confidentiality is expected to be maintained for at least 90 days.

94. Plaintiff's letters were released to public view, as soon as they were received, and this is known because plaintiff would receive interview requests to seek comment on his communications, and these requests would usually occur the next day after submission of a letter.

95. One of these letters was dated September 17, 2021.

96. While this may seem innocuous on its face and a minor oversight by staff, plaintiff is certain that not only were the principals at 128 Collingwood aware of these communications, but that they also then communicated the details to all members of the fraternity already occupying this address.

97. Fraternity members being who they are, determined that plaintiff's communications were a direct attack upon themselves, and so increased their predatory behaviors against plaintiff's property.

98. It appears that this fraternity has determined that if enough damage is done to plaintiff's property he will relent and surrender either his property, or certain aspects of the property to their predations.

99. It does not escape plaintiff that the many search initiatives that the City inflicts on plaintiff are occasioned heavily upon the ability of fraternity members at 128 Collingwood to view plaintiff's property from their upper floors, and indeed predations upon plaintiff's vegetation

when it is, or is soon to be an obstruction to their observations, is one of the patterns in their vandalism.

100. This ability to see into plaintiff's yard informs both the timing of their excursions into plaintiff's property, and information fed to various City departments so as to initiate inspections and/or searches of plaintiff's property.

101. That the City has been unwilling to inflict even minimal code-defined restrictions on 128 Collingwood, requires that plaintiff invoke the 14th amendment here as well, as the situation screams of inequitable treatment.

102. Not only does the City ignore code violations at 128 Collingwood proper, but it has entered into a clandestine agreement with the fraternity at this address, to allow continuous, weekend-long parking by this fraternity on Orchard St. whenever they decide to convert their parking lot into a party venue.

WHEREFORE, Plaintiff request that this Court enter judgment in favor of Plaintiff and against Defendant Weaver and City of East Lansing in an amount not less than $100,000.00.

## COUNT V – 42 U.S.C. §1983
## FOURTH & FOURTEENTH AMENDMENT
## IMPROPER SEIZURE OF INFORMATION
## LOSS OF PRIVACY
## INEQUITABLE TREATMENT
## DEFENDANTS WEAVER AND CITY OF EAST LANSING

**103.** Plaintiff incorporates herein all the prior allegations.

104. The City of East Lansing relied on results of Ingham Animal Control Search Warrant to pursue administrative actions against Plaintiff.

17

105. The City of East Lansing issued a code enforcement letter as a result of the photos taken by Ingham County Animal Control and forwarded to the City of East Lansing Building and/or Code Enforcement department.

106. The City of East Lansing issued two code enforcement tickets totaling 6 citations against the Plaintiff related to photos Joblonski took.

107. Scott Weaver, acting as the City of East Lansing Building Code Official, under color of law, relied on his knowledge and awareness of the photos and/or report from the Oct 21, 2021 search to compose an affidavit for an October 6, 2023 administrative search warrant.

108. On October 6, 2023 Weaver acting under color of law entered the premises at 141 Orchard having called a lock smith to enable his entry.

109. On October 6, 2023 Weaver or a member of his party chose to disable no less than 3 trail cameras positioned within the curtilage at 141 Orchard, intended to record events transpiring within their field of view.

110. The recording of these events were taken from plaintiff without cause, and one can only presume that the reason for this taking was to diminish plaintiff's ability to effectively combat the City's attempted justifications for its actions, which is both a 4th and a 14th amendment violation.

111. On October 6, 2023 as Weaver's party was moving to plaintiff's rear yard, one police officer is heard on a camera not yet at the time defeated, pointing to said camera, and noting its presence to the others in the party.

112. Removal of plaintiff's ability know what is occurring during this search event, takes from plaintiff his unfettered ability to defend himself against any scurrilous accusations that the City may make.

113. The October 6, 2023 search should properly be declared unreasonable, and any evidence disallowed and purged with prejudice in favor of plaintiff.

114. The City no doubt would have plaintiff believe that the searches which they have tried so hard to make appear proper are the only searches which have occurred, however, plaintiff is aware of any number of searches using drones, and had a witness from an earlier time who was prepared to testify as to the fact that the City frequently appeared in force to examine plaintiff's property.  Plaintiff has no way to know prior to discovery, the currency of as yet undisclosed searches.

115. In the words of that witness, when plaintiff asked about a specific date, the response was that they had indeed been there on that date, and, the witness continued without prompting: "…they are in there all the time."  Plaintiff has no way to know prior to discovery, the currency of as yet undisclosed searches.

116. When plaintiff asked this witness if there were more than one person involved in these searches, the response was that they come in force with: police, PACE, building officials… Plaintiff has no way to know prior to discovery, the currency of as yet undisclosed searches.

117. In the terms outlined in a stipulation signed to avoid a dangerous building hearing, the City has allowed plaintiff to understand that within the cognizance of the current City functionaries are the poisoned fruits of an illegal search conducted by former City Attorney Thomas Yeadon (This occurred sometime in the 1990's.)

118. Should there be any confusion as to the legality of the said search, it should be noted that it was built on a 2-week earlier illegal search where Ed Kostrzewski, Dennis Rapson, and Howard Asch, were on-site to look, specifically, at the rear yard – that is until Asch,

whispered to Kostrzewski (as Rapson drew plaintiff off to the side) that he (Asch) needed to "get inside".

119. Kostrzewski, bull-in-a-china-shop that he was, simply pushed his way through the North-side door of plaintiff's house, while plaintiff and the others watched agape.

120. No warrant, no permission, not even a request for permission.

121. Yeadon then apparently thought he could use a wrinkle Kostrzewski had issue with, but sadly for Yeadon, plaintiff had immediately adjusted the matter about which Kostrzewski had made mention.

122. This second search was inherently illegal in that its probable cause was fictitious (no affidavit was ever provided to plaintiff, probably because it was expected that plaintiff would not know that he had a right to said document), and that it was conducted in the middle of the day while plaintiff was known to be safely-out-of-the-way, at work.

123. This second search is the search that the current City administration has allowed plaintiff to know that they are referring to, by the content of the stipulation.


WHEREFORE, Plaintiff request that this Court enter judgment in favor of Plaintiff and against Defendant Weaver and City of East Lansing in an amount greater than $100,000.00.


**RELIEF REQUESTED**


WHEREFORE, Plaintiff demands judgment and pray for the following relief, jointly and severally, against all Defendants:

1. Plaintiff asks that this Court inflict the following penalties: That the City deliver to plaintiff all of the physical infrastructure that he requested in any of his letters as a way to reconstruct his Western boundary security, and make his property closer to whole.

2. Among these details are: abandoning the alley in the area directly West of plaintiff's property, and appending and deeding of the alley right of way subtended by his western property boundary, to plaintiff – both the Eastern 6-feet and the Western 6-feet.

3. Awarding the financial penalties that would have accrued to the City for code violations or deviations either transitory, or structural, to plaintiff with interest continuously accrued on those amounts from the date of the City's initial allowance of those deviations, until they are abated.

   a. Included in this is the value of all parking fines that would have been collected were the City to enforce its parking regulations upon fraternity residents.

4. Awarding a sum equivalent to the value of the lease for the intervening time from the initiation of the lease, until the lease is abandoned (with interest accruing continuously) and the designation as a fraternity house is voided.

5. Constructing the structure outlined in plaintiff's letters, including the forcing of an easement on the 128 Collingwood property upon which the western wall of the structure specified, is to be constructed.

6. Disclosure of all contacts between principals related to 128 Collingwood and/or principals of any other nearby property deemed to harbor antipathy toward plaintiff, and any functionaries of the City, even when such contacts occur through intermediaries; and further, the substance of those contacts.

7. Failure to provide the above disclosures voluntarily, and completely, will, when discovered, and/or credibly inferred occasion an addition fine paid to plaintiff by the City of at least $250,000 for each instance, the specific amount to be determined by the jury in this case.

8. Exemption of plaintiff's property from the ability of the City to restrict its uses; adherence to uniform building codes being the only requirement for plaintiff's adherence.

9. That the City further compensate plaintiff for the actions taken to remove his Western boundary walls and fencing, and that this compensation comprehend the hours spent in its construction the hours spent in its removal and plaintiff's time, compensated at a rate not less than $200/hr. for all the time spent on case 15-0884-OM and its descendant case numbers, as compensation for having so uproariously determined that they could remove a wall which had been found not to be in violation of its rules, by a jury in the referenced case.

   a. In this action, defendant Weaver, took extreme license even relative to the absurd ruling that gave him permission to remove this wall, as he tore out 9 evergreens (9 trunks being the measure) some of which were 12 feet or so in height, tore out irrigation lines, tore out interior wall material not at the boundary; destroyed and removed a large number of bags of topsoil; a 20-gallon container of pea stone; removed 3 or so evergreen stalks being maintained as evidence; and charged plaintiff nearly $2000 for the pleasure of watching this occur.

10. That the City further fund the aspects of his house as he would have built it, but for the City's relentless interference with contractors and specifications during its construction, and that this be done without restriction on the details of the construction.

11. As the violations at 128 Collingwood are addressed so should be the other surrounding violation of East Lansing's code.  Plaintiff asks that he be awarded the amount of all fines that could have been charged against the various properties, assuming that they were fined for each day of deviation, interest on these amounts to accrue continuously, and sums to be assessed each day until satisfactory compliance is achieved.  Plaintiff further expects that in the case of berms to shield parking areas from view, he be allowed to specify the details of how these compliances are to be achieved.

12. That the City compensate via replacement the 30-foot evergreens which the rental housing inspector (known as Wes) demanded via letter that the maintenance people for 131 Orchard were to cut the tops off of, and that the replacement of such evergreens be extended to each evergreen whose demise plaintiff can credibly persuade the jury is a consequence of action or direction associated with the City.

13. Compensation to plaintiff for the disquiet, distress, and all other negative emotions engendered

Further Relief Sought

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury; and

c. Any such other relief as appears just and proper.

_9 -16-24_

Date

Richard Schomaker, Pro Se

141 Orchard St.

East Lansing, MI 48823

517-303-8715


## JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

_9 76-24_

Date

Richard Schomaker, Pro Se

141 Orchard St.

East Lansing, MI 48823

517-303-8715