UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SCHOMAKER,

    Plaintiff,

v.

KATHRYN JOBLONSKI, et al.,

    Defendants.

_____/

Case No. 1:24-cv-966

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Richard Schomaker, proceeding pro se, brings this action against Defendants the City of East Lansing, its Building and Code Administrator, Timothy Schultz, its Fire Marshal, John Newman, and one of its code compliance officers, E. Scott Weaver (collectively, "City Defendants"). Schomaker also names as defendants Ingham County Animal Control and one of its officers, Kathryn Joblonski (collectively, "County Defendants"). Schomaker brings various constitutional claims arising from Defendants' searches of his property and the City's "dangerous building" proceedings related to that property. (Am. Compl., ECF No. 75.) Before the Court is Schomaker's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 53). Schomaker asks this Court to enjoin the enforcement of an order issued by the City requiring him to remediate alleged hazards on his property.

On September 9, 2025, Magistrate Judge Sally J. Berens issued a report and recommendation (R&R) that the Court abstain from hearing Schomaker's claims related to the city proceedings under *Younger v. Harris*, 401 U.S. 37 (1971) (ECF No. 89). Schomaker filed objections to the R&R on September 23, 2025 (ECF No. 94). For the reasons explained below,

the Court will overrule Schomaker's objections, approve the R&R, and stay all proceedings in this case related to Schomaker's claims against the City Defendants.

## I. BACKGROUND

The factual history of this case is more fully set out in the magistrate judge's two R&Rs (ECF Nos. 51, 89). The genesis of this suit was a September 14, 2021, visit to Schomaker's East Lansing property by an Ingham County Animal Control officer. (Am. Compl. ¶¶ 17–18.) The visit was apparently related to feral cats living near the property, but the Animal Control officer also sent pictures of Schomaker's house to the City of East Lansing's department of Parking and Code Enforcement. (*Id.* ¶¶ 20, 24.) On October 21, 2021, Animal Control executed a search warrant for Schomaker's property, accompanied by officials from the City of East Lansing Police and Fire Departments. (*Id.* ¶ 28.) After various interactions between the City and Schomaker over the next few years, the City ultimately scheduled a dangerous building hearing related to the property for March of 2024. (*Id.* ¶¶ 31–39.) However, on March 28, 2024, the City cancelled the hearing and entered into a stipulated agreement with Schomaker to address the alleged violations on the property. (*Id.* ¶¶ 40–41, 266.)

Schomaker filed his initial complaint in this lawsuit on September 16, 2024. On March 14, 2025, a City official posted a "red tag" order on Schomaker's property, which indicates that a structure is unsafe for human occupancy and bars anyone from occupying it. (*Id.* ¶¶ 43, 45.) The City also posted a notice indicating that it had scheduled a dangerous building hearing related to the property for March 27, 2025. (*Id.* ¶¶ 53, 269.) Schomaker filed a motion for a temporary restraining order (TRO) and preliminary injunction on March 26, 2025, in which he asked this Court to enjoin the City from holding the hearing and grant other injunctive relief (ECF No. 28). The Court denied the motion in part in an order issued the same day (ECF No. 29), and denied the rest of the motion in an order issued August 14, 2025 (ECF No. 73).

2

The City held the dangerous building hearing on March 27, 2025, before Hearing Officer Thomas Lapka. (Am. Compl. ¶ 52.) Lakpa issued an order on June 26, 2025, requiring Schomaker to cure violations on the property by July 16, 2025. (*Id.* ¶¶ 70–71.) Schomaker filed this motion for preliminary relief on July 15, 2025, asking the Court to enjoin the enforcement of Lapka's June 26 order. After he filed the motion, the East Lansing City Council held a hearing on October 7, 2025, in which it adopted Lapka's June 26 order and gave Schomaker 60 days to comply. (City Council Order, ECF No. 97-1.)

## II. ANALYSIS

The magistrate judge recommends that the Court stay portions of this case under the doctrine of *Younger* abstention. "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir. 2017) (citing *Younger*, 401 U.S. at 44). "*Younger* abstention can apply to cases that are not criminal prosecutions but . . . such applications are narrow and exist only in a few exceptional circumstances." *Id.* at 369 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 368 (1989) ("*NOPSI*")). Specifically, *Younger* can apply to (1) state criminal proceedings, (2) "state civil proceedings that are akin to criminal prosecutions," and (3) state proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). "Once the proceeding is found to fit into one of the three *NOPSI* categories listed above, the court evaluates the proceeding using a three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)." *Doe*, 860 F.3d at 369. "The *Middlesex* test states that abstention may occur when three criteria are met: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state

proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Id.*

The magistrate judge concluded that the City's dangerous building proceedings are state civil proceedings akin to a criminal prosecution. The magistrate judge also concluded that the *Middlesex* factors support abstention here. First, the magistrate judge reasoned that the dangerous building hearing is part of a proceeding that has been ongoing since March 2024, before the federal lawsuit was filed. Second, the magistrate judge noted that public safety is an important government interest. Third, the magistrate judge determined that Schomaker had an adequate opportunity to raise his federal claims by seeking review of the City's decision in state court. Schomaker raises several objections to the magistrate judge's decision; the Court will address each one below.

### A. Type of Proceeding

Schomaker argues that the state proceedings here are not akin to a criminal prosecution. But the proceedings here are similar to other administrative proceedings to which courts have applied *Younger*. In *Ohio Civil Rights Commission v. Dayton Christian School, Inc.*, 477 U.S. 619, 624–25 (1986), the Supreme Court held that administrative proceedings conducted by the Ohio Civil Rights Commission justified *Younger* abstention. Though the Court subsequently clarified the scope of *Younger* in *Sprint*, in doing so it reaffirmed rather than overruled *Dayton*. *See Sprint*, 571 U.S. at 79. The Ninth Circuit has held that a nuisance abatement proceeding brought by a county warranted *Younger* abstention where it "included an investigation, alleged violations of nuisance ordinances, notice to appear before a zoning board, and the possibility of monetary fines and/or forcible removal of [the plaintiff]'s billboards." *Citizens for Free Speech, LLC v. County of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020). Similarly, the Sixth Circuit has held that a university disciplinary proceeding for a student warranted *Younger* abstention because

4

a state initiated the action, the case "involved a filed complaint, an investigation, notice of the charge, and the opportunity to introduce witnesses and evidence," and the proceeding "could have severe consequences, such as expulsion and future career implications." *Doe*, 860 F.3d at 370.

Those cases support the application of *Younger* here. The dangerous building proceedings were initiated by the City, and involve investigation (*see* Am. Compl. ¶¶ 20, 28), notice to Schomaker of alleged ordinance violations (*see id.* ¶¶ 32, 43, 283), the presentation of evidence (*see id*. ¶ 63), witness testimony (*see id.* ¶¶ 56–58), cross-examination (*see id.* ¶ 61), and the potential for significant consequences for Schomaker, including loss of his home (*see id.* ¶ 306). As the Sixth Circuit recognized in *Doe*, 860 F.3d at 370, these features make *Younger* applicable.

**B. Adequate Opportunity**

Schomaker argues that the state proceedings here do not provide an adequate opportunity to raise his constitutional claims. He notes that he raised a Fourth Amendment claim to Officer Lapka during the hearing, and Lapka rejected the claim without addressing its substance. (Pl.'s Reply Br. 10–11, ECF No. 65.) However, the hearing was not necessarily an inadequate forum merely because Schomaker's claims were summarily rejected. *See Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013) (adequate opportunity to raise federal claims existed despite allegation that state court "ignored" the federal claims); *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 77 (2d Cir. 2003) (*Younger* abstention was warranted even though "the [state] Commission may choose to summarily reject [plaintiff]'s constitutional claims"). Furthermore, now that the City Council has adopted Lapka's order, Schomaker can seek review of the decision in state court. (*See* East Lansing, Mich. Mun. Code 6-175 § 108.5, ECF No. 96-1.) Federal courts "must presume that the state courts are able to protect the interests of the federal plaintiff," and "the burden of establishing the inadequacy of the state courts rests on the plaintiff." *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001). Because

5

Schomaker has not met that burden, the Court presumes that the state court here is an adequate forum.

Schomaker also contends that the state proceedings are inadequate because the City Council is biased against him. The Supreme Court has held that a federal court should not abstain if the state body conducting the underlying proceeding is "incompetent by reason of bias to adjudicate the issues pending before it." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). However, as noted above, Schomaker can appeal the City Council's decision to a state court, and he does not contend that the state court will be biased. It is true that subsequent state court review was available in *Gibson*, and the Supreme Court still held that the bias of the state administrative body prevented *Younger* abstention. *Id.* However, the Court explained that the administrative proceedings "would cause irreparable damage to the [plaintiffs] for which no adequate remedy is afforded by state law." *Id.* at 577 n.16 (internal quotation marks omitted). In other words, the inadequacy of those proceedings was dispositive because state court review would come too late to fix any problems. Here, abstention will not hinder Schomaker's ability to raise his constitutional claims because he is free to immediately seek state court review of the City Council's decision.

Relatedly, courts have sometimes held that *Younger* abstention is inappropriate when state procedural deadlines "would result in the plaintiff suffering some injury prior to being able to raise his or her constitutional challenges." *Witzke v. Idaho State Bar*, 647 F. Supp. 3d 943, 953 (D. Idaho 2022). Here, the red tag notice did bar Schomaker from occupying his home before the City held a hearing where he could raise his constitutional claims. But any harm that occurred before Schomaker had access to an adequate forum has already passed. At this point, Schomaker has immediate access to state judicial review, and this Court is in no better position than the state court to timely address Schomaker's claims. Thus, abstention is proper.

6

### C. Red Tag Order

Schomaker argues that even if the Court abstains from ruling on his claims related to the dangerous building proceedings, it should still hear his claims related to the City's use of the emergency "red tag" order. Essentially, Schomaker contends that the dangerous building hearing only covered the alleged code violations on his property, and not the emergency order requiring him to vacate that property. He points out that the hearing was held under Section 108.3 of the relevant portion of the City code, whereas the red tag was posted under Section 108.7. (*See* East Lansing, Mich. Mun. Code 6-175 §§ 108.3, 108.7.) But Section 108.10 provides that a person subject to a red tag order "may thereafter be afforded a hearing as provided by section[] 108.3." (*Id*. § 108.10.) The red tag and the dangerous building hearing were related to the same underlying property conditions, so it appears that the City simply held one hearing to cover both issues. Schomaker does not explain why the red tag issue would have been outside the scope of the dangerous building hearing.

Relatedly, Schomaker contends that even if the hearing was about the red tag order as well as the alleged code violations, he lacked sufficient notice of this because any information the City provided about the dangerous building hearing did not apply to the red tag order. Again, given that the dangerous building proceeding was about the same building as the red tag order, there is no reason why the City needed to address them separately or provide separate notices.

Schomaker also argues that he cannot challenge the red tag in state court because the appealable order from the City Council only relates to the dangerous building proceeding, not the red tag. In other words, he argues that he lacks any state forum to challenge the red tag order. But as noted above, Schomaker has the burden of demonstrating that the state forum is inadequate, and Schomaker cites no authority for the claim that the state court will refuse to hear his challenge to the red tag order. Moreover, even if the limited scope of the City Council order prevents

7

Schomaker from litigating the issue on appeal, he could have preserved it by raising the issue before the City Council.  If an opportunity to raise his federal claims in state court existed, Schomaker's "failure to avail [himself] of such [an] opportunit[y] does not mean that the state procedure[] w[as] inadequate."  *Juidice v. Vail*, 430 U.S. 327, 337 (1977).  Thus, *Younger* abstention is warranted as to Schomaker's claims about the red tag order.

### D. Procedural Violations

Schomaker argues that the City code required Lapka to submit a report about the hearing to the City Council by July 21, 2025, but Lapka did not do so until August 15, 2025.  (Pl.'s Objs. 17–18.)  Schomaker contends that the delay (1) means the City proceedings are no longer "ongoing" under *Younger*, and (2) prevents him from ultimately appealing the City's determination in state court.  As to the first contention, the Court is not persuaded that a missed deadline by the state affects whether a proceeding is "ongoing."  As to the second, Schomaker cites no legal authority for his argument that the missed deadline deprives the state courts of jurisdiction to review the City Council's determination.  Schomaker also contends that the City's delay constitutes fundamental unfairness, but the Court should abstain even when the state proceedings are procedurally imperfect.  *See Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 195 (1st Cir. 2015) (procedural issues in state proceedings do not prevent abstention because "courts ordinarily should look to the general class of proceedings in determining whether *Younger* abstention applies" (citing *NOPSI*, 491 U.S. at 365)).  Moreover, a single missed deadline would not convert the state proceeding into an inadequate forum.

### E. Flagrant Unconstitutionality

Schomaker argues that the Court should not abstain because the City's actions are unconstitutional.  But *Younger* abstention does not depend on the underlying legal claims.  An exception exists when a plaintiff challenges a flagrantly unconstitutional policy, such as a statute

8

that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Doe*, 860 F.3d at 371 (quoting *Younger*, 401 U.S. at 53–54). Here, Schomaker has not pointed to any flagrantly unconstitutional statute or policy, so this exception does not apply.

### F. Bad Faith Exception

Schomaker contends that abstention is unwarranted because the City's enforcement actions were taken in "bad faith," which is a recognized exception to *Younger*. *See Doe*, 860 F.3d at 371. But "the Supreme Court has applied the bad faith/harassment exception 'to only one specific set of facts: where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions.'" *Lloyd v. Doherty*, No. 18-3552, 2018 WL 6584288, at *4 (6th Cir. Nov. 27, 2018) (quoting *Ken-N.K., Inc. v. Vernon Township*, 18 F. App'x 319, 324 n.2 (6th Cir. 2001)). Because there is no indication here that similar bad faith enforcement occurred, the bad faith exception does not apply.

### G. Timing

Finally, Schomaker contends that the state proceedings were not ongoing when he filed this lawsuit. Although the magistrate judge reasoned that the proceedings began in March 2024 with the scheduled (and later cancelled) dangerous building proceeding, Schomaker argues that the March 2025 hearing was a separate proceeding that began after this lawsuit.

The Court need not resolve this issue because abstention is warranted either way. If a state proceeding begins after a related federal proceeding, *Younger* abstention is still appropriate if the state proceeding commences "before any proceedings of substance on the merits have taken place in the federal court." *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)). Even if the city proceedings did not commence until the March 27, 2025, hearing, at that point this Court's only determination on the merits was a March

9

26, 2025, order denying in part Schomaker's emergency request for a TRO and preliminary injunction (ECF No. 29).  The denial of a TRO is not a proceeding of substance on the merits.  *See Hicks*, 422 U.S. at 338, 349.  The March 26 order was essentially a TRO denial, in that it issued the same day Schomaker's motion was filed, occurred without any responsive briefing by Defendants, and denied the emergency injunctive relief Schomaker requested.  Thus, no proceedings of substance on the merits had occurred when the dangerous building proceedings began, and abstention is appropriate.

### III. CONCLUSION

For the reasons explained above, the Court will overrule Schomaker's objections and approve and adopt the R&R.  As the magistrate judge explained, a court abstaining under *Younger* may dismiss claims associated with requests for injunctive or declaratory relief, but must stay claims associated with requests for damages.  *Nimer*, 707 F.3d at 702.  The Court will therefore stay Schomaker's claims against the City Defendants (Counts IV through IX of the amended complaint) until the City's dangerous building proceedings and any associated state court appeals are complete.  The Court will not stay Schomaker's claims against the County Defendants at this time, though a stay may be warranted in the future if developments in this case or the state case indicate that there are overlapping issues between the two proceedings.  Additionally, because Schomaker's motion for preliminary injunction relates only to the stayed claims, the Court will deny the motion.

An order will enter consistent with this Opinion.

Dated: October 17, 2025                         /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                CHIEF UNITED STATES DISTRICT JUDGE