UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SCHOMAKER,

      Plaintiff,

                                      Case No. 1:24-cv-966

v.

                                      Hon. Hala Y. Jarbou

KATHRYN JOBLONSKI,
et al.,

      Defendants.

_____/

## ORDER REGARDING REPORT AND RECOMMENDATION

Plaintiff Richard Schomaker brings this civil rights action against multiple defendants, including Ingham County Animal Control ("ICAC") and ICAC Officer Kathryn Joblonski.  Before the Court is the report and recommendation of the magistrate judge that the Court grant the motion for summary judgment filed by Joblonski and ICAC.  (R&R, ECF No. 101.)  Schomaker has objected to the R&R.  (Objs., ECF No. 102.)

Under Federal Rule of Civil Procedure 72,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Schomaker's claims stem from ICAC's investigation of complaints that Schomaker was keeping cats without properly caring for them.[1]  Among other things, Schomaker claims that Joblonski violated his Fourth Amendment rights when she entered the curtilage of his home on

---

[1] Michigan law makes it a crime for an "owner, possessor, . . . or person having charge or custody of an animal" to "fail to provide [the] animal with adequate care."  Mich. Comp. Laws § 750.50(2)(a).

several occasions without a warrant, and again when she entered the curtilage of his home and peered inside his house and garage with a warrant in hand.[2]  The magistrate judge reviewed the evidence and determined that Schomaker failed to demonstrate the existence of a material factual dispute as to any of his Fourth Amendment claims.  In other words, the warrantless entries were permissible under exceptions to the warrant requirement and the entry with the warrant was legal because the warrant was valid.  Schomaker objects to these conclusions.

Objections re Search Warrant

Objection 1: Lack of Nexus

Schomaker argues that the search warrant was deficient insofar as it permitted ICAC to search his home because the warrant affidavit lacked a substantial basis for concluding that evidence of criminal activity (i.e., animal neglect) would be discovered inside his home or garage. The Court disagrees.  The magistrate noted the following facts from the affidavit:

> the presence of numerous cats roaming on the Property, some of which were sick and required veterinary care and one of which had to be medically euthanized; Schomaker's admission that he was aware of the impounded kitten's need for veterinary care and failed to obtain such care; Schomaker's statements that he would put lysine in the cats' food to help with their upper respiratory infections and would seek veterinary care for the cats; the presence of one or more cat beds on the Property and Schomaker's apparent placement of collars on some of the cats; and Schomaker's admission that he had been feeding the cats for years.

(R&R 24.)  The magistrate judge also noted Joblonski's observation in the affidavit regarding "conditions on the Property indicating that Schomaker showed signs of hoarding disorder, including hoarding of animals, and . . . that based on her training and experience, animal hoarders tend to harbor animals both inside and outside their residences."  (*Id.*)

---

[2] Apparently, officials were not able to enter Plaintiff's home or garage due to hoarded belongings inside these buildings that were blocking the entrances and that allowed the exterior doorways to open only partway. (*See* R&R 7; ICAC Rep., ECF No. 85-11, PageID.1317.)

Schomaker objects that all the cats observed were outside the home and that training and experience cannot substitute for an evidentiary nexus between the offense and the place to be searched.  Even so, there was a sufficient nexus in this case.  It is common sense that an individual feeding and caring for multiple cats around their home is likely to be keeping some of those cats inside their home.  Joblonski's training and experience added additional support to what was already a reasonable inference from the facts.  *See United States v. Branch*, 537 F.3d 582, 589 (6th Cir. 2008) (permitting reliance on training and experience to support probable case).

In addition, the warrant permitted the officer to search for veterinary records, which is the sort of evidence that was likely to be found inside Schomaker's premises.  Schomaker argues that this particular request was pretextual because officers had already obtained veterinary records associated with Schomaker's address under the customer name "Ferlie Yruma."  (*See* R&R 4.)  But that argument erroneously assumes the officers knew that those records were the only ones available.  To the contrary, the officers could reasonably assume that other records might be available in Schomaker's home, particularly where, as here, Schomaker had apparently attempted to conceal his identity at the two clinics he visited.  It is possible that copies of other records were present inside Schomaker's home, and that those records were not readily available from veterinary clinics because they were not associated with Schomaker's name or address.

Schomaker compares this case to *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006), in which the Sixth Circuit held that the arrest of an individual outside his home with drugs on his person was insufficient to establish that evidence of drug dealing would likely be found inside his home.  *Id.* at 525.  In particular, the court noted the absence of any evidence of drug trafficking, such as independent corroboration that the individual was a known drug dealer.  *Id.* at 524-25.  *McPhearson* is distinguishable because evidence of animal neglect was present at and

3

around Schomaker's home.  In those circumstances, it was reasonable to infer that additional evidence of such neglect might be found inside his home as well.

Schomaker also notes that when the officers executed the warrant, they found no cats inside the residence.  That fact is immaterial because probable cause is determined based on facts known at the time the warrant issued, not at the time after its execution is complete.  The absence of cats inside the home or garage when the officers executed the warrant does not detract from the validity of the warrant or the search pursuant to that warrant.

Relatedly, Schomaker objects to the magistrate judge's assertion that an East Lansing ordinance permitting the feeding of stray cats was irrelevant to the probable cause finding.  (*See* R&R 26.)  That ordinance provides that "[n]o person shall have at any time outdoors on their property or property leased by them, or in any other place readily accessible by stray cats, more than one-half pound of cat food or food intended for consumption by cats."  (ECF No. 17-4, PageID.202.)  Schomaker argues that this ordinance fatally undermines the theory of probable cause in his case, i.e., that feeding cats outdoors creates custody over the cats, because the ordinance purportedly permits the outdoor feeding of stray cats over whom the homeowner does not have custody.  This argument is not persuasive.  The East Lansing ordinance says nothing about whether feeding stray cats creates custody under Michigan law.  It simply limits the amount of cat food a resident can keep outdoors.  Moreover, there were numerous facts suggesting Schomaker had taken charge or custody over the cats on his property.  For instance, there were numerous cats on his property, he admitted that he had been feeding them for several years, he had created or placed a cat bed on or near his porch, he had taken some cats to a vet for treatment, he had apparently put collars on several cats, he had promised to treat the cats by putting medicine in their food, and he had apparently made no effort to use a live trap ICAC loaned to him to capture

cats and surrender them to ICAC.  The ordinance does not undermine any of these facts.  Thus, the Court agrees that the ordinance does not undermine the validity of the warrant.

Next, Schomaker contends that the warrant failed the particularity requirement because it permitted the seizure of "any and all live or deceased domesticated animals" on Schomaker's property.  (Warrant, ECF No. 85-10, PageID.1314.)  He cites *Groh v. Ramirez*, 540 U.S. 551 (2004), in which the Supreme Court noted that the Fourth Amendment requires that a warrant "particularly describe[e] the place to be searched, and the persons or things to be seized." *Id.* at 557 (emphasis omitted).  In *Groh*, the warrant failed this requirement because it did not describe any items to be seized. *Id.* at 558.  The warrant in this case did not have that defect.  Instead, Schomaker argues that the description (all domesticated animals) was too broad.  However, "[i]nfirmity due to overbreadth does not doom the entire warrant; rather, it requires the suppression of evidence seized pursuant to that part of the warrant . . . , but does not require the suppression of anything described in the valid portions of the warrant . . . ." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (quoting *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)).  Schomaker does not contend that Defendants improperly seized any animals.  Thus, the overbreadth issue he raises is not applicable to his Fourth Amendment claim.

Objection 2: Affidavit Omissions

Schomaker argues that the magistrate judge improperly determined that certain omissions from the warrant affidavit were not material to its validity.

(a) Stop Feeding Directive

Schomaker notes that the warrant omitted the fact that, on October 7, 2021, Joblonski had instructed Schomaker to stop feeding the cats and that Schomaker complied with this instruction. At a preliminary examination hearing that took place after Joblonski executed the warranted, she

testified that she gave Schomaker this instruction on October 7, 2021, and that when she executed the warrant on October 21, 2021, she did not observe cat food outside his residence; thus, in her opinion he had complied with her instruction.  (Prelim Exam Tr. 51-52, ECF No. 102-2.) According to Schomaker, this evidence indicates that he had stopped feeding the cats for two weeks, which undercuts any inference that he continued to exercise any custody or control over the cats on his property.

Schomaker did not make this argument when responding to Defendants' motion; consequently, the magistrate judge did not have an opportunity to address it.  Instead, Schomaker pointed to other omissions from the warrant affidavit that he believed were relevant to the probable cause determination.  (*See* Pl.'s Resp. Br. 15, ECF No. 95.)  Indeed, Schomaker did not submit evidence of Joblonski's statements at the preliminary examination until after the magistrate judge issued the R&R.  "[A]bsent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).  Accordingly, he has forfeited this issue.  *See Odell v. Kalitta Air, LLC*, 107 F.4th 523, 533 (6th Cir. 2024) (deeming issues raised for the first time in objections to be forfeited).

In addition, the argument is meritless.  There is no evidence Joblonski was aware that Schomaker had stopped feeding the cats when she sought the warrant on October 20, 2021.  To the contrary, the warrant affidavit indicates that the day before Joblonski applied for the warrant, ICAC received a citizen complaint reporting that there were approximately 20 cats roaming about Schomaker's front yard.  (Warrant Aff., ECF No. 85-4, PageID.1272.)  These facts suggest that, despite Joblonski's instructions, Schomaker continued to harbor cats on his property by feeding them.

(b) <u>Healthy Cat Observations</u>

Schomaker notes that Joblonski omitted from the affidavit her observations that, on two occasions when visiting Schomaker's property, the cats she observed appeared healthy. Schomaker argues that this omission would have provided "a materially different basis for assessing whether probable cause existed" to issue the warrant.  (Pl.'s Objs. 10, ECF No. 102.) However, the Court agrees with the magistrate judge that these observations "would not have undercut the facts [Joblonski] provided about her observations of sick cats on several other occasions." (R&R 26.)  Indeed, she had observed sick cats on Schomaker's property the day before applying for the warrant.  Also, Joblonski had discovered veterinary records associated with Schomaker for only two cats, despite the fact that he appeared to be caring for multiple cats. Accordingly, even if she had observed healthy cats at other times, there was probable cause to believe that Schomaker owned or possessed cats for which he was not providing adequate care.

Schomaker argues that the foregoing analysis is faulty because it does not account for the fact that Joblonski acted knowingly or with reckless disregard for the truth when omitting her observations about healthy cats.  Schomaker relies on *Franks v. Delaware*, 438 U.S. 154 (1978), which established that a search warrant is invalid if (1) it contains a false statement that was made "knowingly and intentionally, or with reckless disregard for the truth" and (2) without the false statement, "the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 155–56.  A similar rule applies to omissions, i.e., a warrant is invalid if (1) the officer applying for it omitted information intentionally or with reckless disregard for the truth and (2) the omitted information is "material to a finding of probable cause." *United States v. Schumacher*, 611 F. App'x 337, 339–40 (6th Cir. 2015).  Schomaker has not met this test.  For reasons discussed,

Joblonski's observations about healthy cats were not material.  Even if these observations had been included in the warrant affidavit, there were sufficient facts to establish probable cause.

Objection 3: Ownership Element

Next, Schomaker contends that the magistrate judge improperly rejected his argument that the warrant was invalid insofar as it sought evidence to establish his ownership, possession, or custody of, or charge over, the cats on his property.  Schomaker is correct that the warrant was invalid if it was not supported by probable cause to believe that Schomaker had taken custody or control over the cats on his property.  But he is mistaken in thinking that the warrant affidavit lacked evidence to establish such probable cause.  As discussed above in connection with Objection 1, there were multiple facts in the warrant affidavit that would give a "prudent person" reason to believe that Schomaker had taken charge over the cats.  *See Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (defining probable cause).  Thus, the Court rejects his objection that the warrant affidavit failed to establish probable cause for the "ownership" element of the offense of animal neglect.

Objections re Warrantless Entries

Objection 1: Consent for Entry on October 7, 2021

Schomaker claims that Joblonski entered the curtilage of his property without a warrant on October 7, 2021, to pick up a live trap that ICAC had loaned to Schomaker.  The magistrate judge determined that this entry was proper because Schomaker impliedly consented to it by leaving the trap on his front porch for Joblonski to retrieve.  (R&R 22.)  Schomaker, however, contends that Joblonski entered his property *before* Schomaker put the trap on the porch.  Indeed, the warrant affidavit suggests that Joblonski visited and potentially entered Schomaker's property before Schomaker put the trap on his porch for retrieval.   In that affidavit, Joblonski asserted that when

8

she arrived at Schomaker's property, she "did not view the live trap in the designated area that was previously discussed." (Warrant Aff., PageID.1272.) Consequently, she had another officer contact Schomaker by telephone "to ask for the live trap back which he then put on the front porch for [Joblonski] to come back to the address and retrieve." (*Id.*) Viewing this evidence in the light most favorable to Schomaker, and absent any other evidence of how Joblonski could have searched for the trap without entering Schomaker's property, a jury could infer that Joblonski entered Schomaker's property to find the trap *before* Schomaker consented to have Joblonski retrieve it from the front porch. Consequently, the Court will reject the R&R insofar as it recommends dismissing this claim based on the fact that Schomaker consented to this entry.

Objection 2: Exigent Circumstances for Entries on September 14 and October 19, 2021

Schomaker objects to the magistrate judge's conclusion that Joblonski's warrantless entries onto his property on September 14 and October 19, 2021, were justified by a belief that exigent circumstances existed, i.e., that there were cats on Schomaker's property requiring immediate care. "Under the exigent-circumstances doctrine, there must be a 'need for prompt action by government personnel, and [a conclusion] that delay to secure a warrant would be unacceptable under the circumstances.'" *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 490 (6th Cir. 2014) (quoting *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 695 n.1 (6th Cir. 2013) (cleaned up)).

The magistrate judge compared this case to *United Pet Supply*, in which officials seized animals without a warrant from a pet store. *See id.* The court upheld the seizure based on the following exigent circumstances: "the animals were dehydrated and in high heat and without water, . . . one hamster had a large cut that had not received medical care, and . . . [another] hamster had died in its cage." *Id.* Similarly, in *King v. Montgomery County*, 797 F. App'x 949 (6th Cir.

2020), an officer was told that dogs inside a home were exposed to ammonia fumes, required urgent veterinary attention, and lacked food or water. *Id.* at 955.  The court upheld the officer's entry into the home and seizure of the dogs based on exigent circumstances.  "[A]llowing the dogs to remain in the home risked their lives," so it would have been "impracticable" to obtain a warrant before removing them. *Id.* at 956.

The Court agrees with Schomaker that the facts in *United Pet Supply* and *King* are distinguishable from his case.  In those cases, the officers had reason to believe that the animals' lives were in imminent danger.  Thus, it was reasonable for the officers to conclude that obtaining a warrant would be impracticable because any delay in protecting the animals could "mean the difference between life and death." *King*, 797 F. App'x at 956.  Here, by contrast, ICAC received a complaint on September 14, 2021, that cats "free roaming" on Schomaker's property were "presenting symptoms of upper respiratory infections such as sneezing along with eye and nasal discharge."  (Warrant Aff., PageID.1270.)  Joblonski purportedly entered Schomaker's property based on this complaint; however, the facts asserted in the citizen complaint do not suggest that the cats were in such imminent danger of physical injury that obtaining a warrant before such entry was impracticable.

Similarly, on October 19, 2021, Joblonski purportedly entered Schomaker's property because ICAC had received a complaint that an individual driving by the property had to proceed "cautiously" to avoid running over cats from Schomaker's property that had roamed onto the roadway; the complainant also stated that she observed about 20 cats on the property and that she had "concerns" for their welfare.  (*Id.*, PageID.1272.)  These facts also do not suggest the sort of imminent danger of harm that would excuse the absence of a warrant.

10

The magistrate judge suggests that it was reasonable for Joblonski to enter Schomaker's property to "confirm whether any cats, in fact, required immediate veterinary care."  (R&R 20.) However, that logic puts the cart before the horse; it implies that Joblonski could enter Schomaker's property to determine whether exigent circumstances existed, even when such circumstances were not apparent before entry.  To the contrary, the exigent circumstances doctrine requires that the official form a reasonable belief that such circumstances exist *before* conducting a warrantless search or seizure that would be covered by the Fourth Amendment.  *See King*, 797 F. App'x at 955-56 (noting that the officers formed a reasonable belief about the existence of exigent circumstances before entering the home).  The doctrine does not justify a warrantless search or seizure for the purpose of confirming whether exigent circumstances exist.

Defendants contend that additional facts were available to Joblonski based on her "plain view" of the property, but Defendants offer no evidence to support this assertion.  The warrant affidavit provides additional details that Joblonski observed when she was at Schomaker's property on the dates of her warrantless entries, but it is not clear where she was located when she observed these details.  Thus, it is not clear whether she gleaned those facts because they were in plain view to the public or whether she observed them only after entering Schomaker's property without a warrant.  If she did the latter, then she may have violated Schomaker's Fourth Amendment rights.  Thus, the affidavit does not dispose of Schomaker's claim that she entered his property in violation of the Fourth Amendment.

To be sure, it is possible that the Fourth Amendment permitted Joblonski to observe, or even enter, the curtilage of Schomaker's property without a warrant.  *See Florida v. Jardines*, 569 U.S. 1, 7 (2013) (noting that officers can observe homes while passing by on public thoroughfares and that an officer "may approach a home and knock" on the front door because "that is 'no more

than any private citizen might do.'" (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)).  Here, for instance, the magistrate judge opined that, on October 19, Joblonski "acted within the scope of her implied license recognized in *Jardines* by limiting her entry to approaching the front door to speak with Schomaker," and that Joblonski would have seen "sick kittens in plain view" as she did so.  (R&R 22.)  However, Defendants did not present sufficient evidence or argument that would permit the Court to discern the part of Schomaker's property that Joblonski entered or to conduct the "fact-intensive analysis" required to assess whether that area was protected by the Fourth Amendment.  *See Morgan v. Fairfield County*, 903 F.3d 553, 561 (6th Cir. 2018).  Neither the warrant affidavit, nor Joblonski's written report, nor the photographic evidence in the record, when viewed in the light most favorable to Schomaker, support the magistrate judge's conclusions that Joblonski limited her entry to approaching Schomaker's front door, or that Joblonski would have seen sick kittens requiring immediate care during that approach.  Consequently, Defendants have not shown that they are entitled to summary judgment for Schomaker's illegal entry claims.  In short, the Court will reject the R&R to the extent it recommends dismissal of such claims.

Objection 3: Vagueness Claim

In Count III of Schomaker's amended complaint, he claims that Defendants enforced a vague county ordinance.  Specifically, he refers to the ICAC ordinance provision that defines an owner of an animal as

> every person having a right of property in the animal, an authorized agent of the owner, and every person who keeps or harbors the animal or has it in his care, custody or control, and every person who permits the animal to remain on or about the premise occupied by him.

(ICAC Ordinance, ECF No. 1-5, PageID.32.)

"To succeed on a vagueness claim, a plaintiff must show that the relevant ordinance '(1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what

conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement.'" *Blankenship v. Louisville-Jefferson Cnty., Ky. Metro Gov't*, 162 F.4th 644, 661 (6th Cir. 2025) (quoting *Brown v. City of Albion*, 136 F.4th 331, 344 (6th Cir. 2025)).  Schomaker apparently contends that this ordinance provision is vague because it imposes liability on those who permit an animal to remain on their property.  The Court discerns no vagueness in that language, however; it is straightforward and easy to comprehend.  Contrary to Schomaker's argument, it does not permit arbitrary or unfettered discretion in enforcement.

Moreover, the Court agrees with the magistrate judge that the ICAC ordinance's definition of owner does not support Schomaker's vagueness claim because there is no dispute that Defendants did not apply this definition to Schomaker.  Instead, they applied the Michigan statute prohibiting animal neglect.  The latter served as the basis for Joblonski's investigation, the warrant, and the charges against Schomaker.  *See Blankenship*, 136 F.4th at 662 (dismissing vagueness challenge to permitting scheme because, among other things, it "was not even enforced against [the] Plaintiff" in the case).  Indeed, Schomaker does not explain how the ICAC ordinance definition had any application to his case.  It does not set the standard for ownership or custody under Michigan's animal cruelty law.  Nor has he shown that Defendants investigated Schomaker or deprived him of any rights solely because he permitted stray cats to remain on his property.  To the contrary, the undisputed evidence indicates that Schomaker actively encouraged the presence of those cats by feeding them, and that he was exercising custody or control over them by providing them with bedding, collars, medicine, and veterinary care.  Thus, the Court agrees that Schomaker's vagueness claim in Count III should be dismissed.

That said, the Court disagrees with the reasoning in the R&R to the extent it concludes that the Court should dismiss Count III in its entirety.  Only *part* of this claim is based on vagueness

in the ICAC ordinance.  The primary thrust of Count III is that the ICAC ordinance constitutes an "unconstitutional custom [and/or] policy of the county" that makes the county liable for the asserted violations of Schomaker's Fourth Amendment rights.  (*See* Suppl. 1st Am. Compl. 22, ECF No. 75.)  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the county may be liable under 42 U.S.C. § 1983 only if its policy or custom caused Schomaker's injury, so Schomaker must identify the relevant policy or custom that is the cause of his injuries.  *See Los Angeles County v. Humphries*, 562 U.S. 29, 35-37 (2010).

Here, Schomaker apparently contends that the following portion of the ICAC ordinance purports to give ICAC officers authority to enter private property without a warrant for the purpose of investigating violations of state law pertaining to the treatment of animals:

> The Animal Control Officer, his deputies or assistants are hereby authorized and empowered in accordance with the provisions of this Ordinance to enter upon private premises for the purpose of inspecting same for the purpose of determining the harboring, keeping or possessing any dog or dogs for the specific purpose of determining if the owners of said dogs have complied with the appropriate provisions of this Ordinance and to apprehend and take with him any dogs for whom no license has been procured in accordance with this Ordinance or for any other violation hereof.  *The provisions of this subsection shall specifically include, but not be limited to, investigation of or seizure for cruelty to animals.*

(ICAC Ordinance (quoted in Suppl. 1st Am. Compl. ¶ 170) (emphasis added).)  While the bulk of the foregoing provision pertains to investigations concerning the proper keeping of dogs, the last sentence expressly expands the provision to investigations of other animal-related violations, including "but not limited to" cruelty to animals.  Thus, it is possible to read the provision to encompass the investigation of animal neglect conducted by Joblonski in this case.  Furthermore, while other sections of the ICAC ordinance discuss warrant procedures for arrests and for the seizure of animals, the ordinance does not discuss such procedures for searches of private property.  The absence of such procedures for searches arguably suggests that Ingham County has given ICAC officers authority to conduct warrantless searches on private property.  In their motion for

summary judgment, Defendants do not address Schomaker's claim that this ordinance provision is a policy or custom of the county that caused the Fourth Amendment violations.  Instead, they erroneously assert that the ICAC ordinance is not relevant because Defendants did not apply it to him.  Accordingly, the Court is not persuaded that Defendants are entitled to summary judgment on the *Monell* claim.[3]

Objection 4: Resolving Factual Disputes

Schomaker argues that the magistrate judge improperly resolved several factual disputes in Defendants' favor.  For instance, Schomaker contends that the magistrate judge determined that Schomaker put the trap on his porch before Joblonski entered his property on October 7, 2021.  As discussed above, the Court agrees with Schomaker on this point and will allow that Fourth Amendment illegal entry claim to proceed.

Next, Schomaker contends that the magistrate judge improperly determined that Schomaker was the owner of the cats on his property.  Schomaker argues that Joblonski did not establish his ownership of the cats when applying for the warrant, which undermines the validity of the warrant.  But *establishing* Schomaker's *ownership* was not necessary.  Instead, the warrant affidavit needed to establish *probable cause* to believe that Schomaker *possessed* the cats or was a person with *charge* or *custody* over them.  *See* Mich. Comp. Laws § 750.50(2)(a).  The affidavit satisfied this requirement.

---

[3] To the extent ICAC contends that it should be dismissed because it is not an entity capable of being sued, the Court will substitute Ingham County for ICAC because the county is the proper party and it is clear that Plaintiff intended to sue the municipal entity responsible for the ICAC ordinance and that he erred only by naming a division of the county rather than the county itself.  Also, it appears that the county has been defending the lawsuit on behalf of ICAC, so the county will suffer no prejudice from the substitution.  *See Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006) (liberally construing complaint against police department to assert claim against the municipality); *Searcy v. Macomb Cnty. Jail*, No. 2:10-CV-11242-DT, 2014 WL 1304317, at *2 (E.D. Mich. Feb. 12, 2014) ("Under [Rule 21], courts regularly substitute municipalities as real parties in interest when a *pro se* plaintiff improperly names an entity not subject to suit, such as a jail or police department."), *report and recommendation adopted sub nom. Searcy v. Macomb County*, No. 2:10-CV-11242, 2014 WL 1304323 (E.D. Mich. Mar. 31, 2014).

Schomaker notes that the magistrate judge did not address whether he complied with Joblonski's directive to stop feeding the cats.  But as discussed above, Schomaker forfeited this argument by not raising it to the magistrate judge.  And at any rate, the argument is meritless.

Schomaker further contends that the magistrate judge minimized Joblonski's observation of healthy cats on September 14, 2021.  That observation, he contends, undercut any exigency to justify Joblonski's warrantless entry onto his property on that date.  This objection is moot because the Court will allow that entry claim to proceed.

### Rule 56(d) Relief

As part of his response to the motion for summary judgment, Schomaker submitted a sworn declaration under Rule 56(d) of the Federal Rules of Civil Procedure identifying facts that he could not establish or refute without an opportunity for further discovery.  (Pl.'s Decl., ECF No. 95-3.)  He also identified reasons why he was unable to conduct full discovery within the allotted discovery period.  He asks for 90 days of additional time to conduct discovery in order to obtain more information about these facts.  The magistrate judge recommends denying relief because Schomaker's discovery requests are not "material" to his claims and because he has not given sufficient reason why he was unable to obtain the necessary information through the discovery process available to him.  (R&R 10-11.)

Schomaker objects to both reasons for denying relief but the Court agrees with the magistrate judge that his discovery requests are not material.  They would not enable him to "rebut the movant's showing of the absence of a genuine issue of fact." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)).  Schomaker asks for discovery to resolve the following factual disputes:  (1) whether probable cause existed to search his home; (2) whether Joblonski omitted

16

any material facts from the warrant affidavit; (3) whether exigent circumstances justified the warrantless entries onto his property; (4) whether "clear legal standards" existed for when feeding creates custody under Michigan law or when warrantless investigation is permitted; and (5) whether ICAC is a separate legal entity. (*See* Pl.'s Decl., PageID.1507–1508.)

Taking the issues in turn, there is no question that the warrant affidavit provided a sufficient basis for probable cause. No amount of additional discovery would change that fact. Second, as to Joblonski's suspected omissions from the warrant affidavit, Schomaker does not point to any facts that Joblonski could have known that would have undermined the probable cause finding. If such facts existed, Schomaker would be in a position to identify them. After all, he lived at the property where the search took place. Third, regarding exigent circumstances, the Court has concluded that Defendants are not entitled to summary judgment on this basis, so Schomaker's request for additional discovery on that issue is unnecessary. Fourth, the existence of clear legal standards is not a fact issue relevant to Schomaker's claims or subject to discovery. Finally, ICAC's existence as a separate legal entity is a moot point because the Court will allow the claim to proceed against Ingham County.

In addition, the Court agrees that Schomaker could have conducted any needed discovery during the discovery period. He claims that he was displaced from his home for a period of time, but by his own admission, that displacement did not occur until a month after the discovery period commenced. (Pl.'s Decl., PageID.1507.) And even after that displacement, he was able to actively litigate other issues in the case; he even submitted a discovery request to Defendants that he withdrew the same day because "the proper scope of discovery was unclear." (*Id.*) He acknowledges that the scope of discovery became clear a week later, but he claims that the court stayed the discovery process before he could re-serve his discovery requests. (*Id.*) However, the

17

Court did not stay discovery.  Instead, it stayed the "deadlines" in the case, which did not impact Schomaker's ability to serve his discovery requests.  (8/11/2025 Order, ECF No. 71.)  If he was able to continue litigating this case, he could have served his discovery request on Defendants. Thus, Schomaker has not shown that he is entitled to additional discovery.

Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 101) is **ADOPTED IN PART** and **REJECTED IN PART** as the opinion of this Court.  The R&R is rejected insofar as it concludes that (1) Schomaker does not state a *Monell* claim; (2) Schomaker's claims against ICAC and Schomaker's official capacity claim against Joblonski should be dismissed; and (3) Joblonski did not violate the Fourth Amendment when she entered Schomaker's property without a warrant on September 14, October 7, and October 19, 2021.  The Court adopts the R&R insofar as it concludes that (1) Count II of the complaint should be dismissed because the search warrant affidavit provided probable cause to execute a valid search on October 21, 2021; and (2) Plaintiff does not assert a viable vagueness claim in Count III.

**IT IS FURTHER ORDERED** that Defendants' motion for dismissal or for summary judgment (ECF No. 84) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Schomaker's claim in Count II of the complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Count III of the complaint is **DISMISSED IN PART** to the extent it asserts a vagueness challenge to Ingham County's animal control ordinance.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Ingham County as a party in place of Ingham County Animal Control.

**IT IS FURTHER ORDERED** that Schomaker's request for additional discovery under Rule 56(d) is **DENIED**.

As to Defendants Joblonski and Ingham County, the claims remaining are: Count I (Joblonski's warrantless entries onto Plaintiff's property on September 14, October 7, and October 19, 2021); and Count III (the *Monell* claim against Ingham County).

Dated: February 25, 2026         /s/ Hala Y. Jarbou
                                        HALA Y. JARBOU
                                        CHIEF UNITED STATES DISTRICT JUDGE